UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENAS TO BRADY FOLLIARD AND MCKNIGHT & KENNEDY, LLC. <br><br> MCKNIGHT & KENNEDY, LLC, <br><br>        Respondant, <br><br> v. <br><br> CDW GOVERNMENT, INC., <br><br>        Movant. | No 10-mc-789 (ESH) (AK) |

**MEMORANDUM OPINION**

This case is referred to the undersigned for determination of McKnight and Kennedy,

LLC's ("McKnight") Motion for Attorney Fees and Costs [14]. CDW Government, Inc.

("CDW") filed an Opposition [15] and the undersigned held a hearing on January 31, 2012.

Plaintiff's Motion will be denied, because Plaintiff has a strong interest in the underlying lawsuit.

**I.  BACKGROUND**

The Motion for Attorney Fees followed CDW's Motion for enforcement of a subpoena

*duces tecum* requesting documents from the law firm of McKnight and Kennedy, LLC , and

specifically, Mr. Vincent McKnight ("Mr. McKnight"). The requests for documents were part of

discovery in a Qui Tam action pending in the Northern District of Illinois, brought by Joseph

Liotine ("Liotine suit").  The Liotine suit is one of two Qui Tam lawsuits originally filed against

CDW for violations of the Trade Agreement Act, 19 U.S.C. §§ 2501 *et seq*.  The second suit was

filed by Brady Folliard in the U.S. District Court for the District of Columbia ("Folliard suit").

McKnight represented Folliard in the Folliard suit.

On November 5, 2010, CDW issued identical subpoenas on Brady Folliard ("Folliard")

Both cases were based on the same set of facts alleging that CDW violated the Trade

Agreements Act by selling computer products to the U.S. Government that originated from non-

trade compliant countries.  (Compl. at 5-6.)  The filing of the Liotine suit predated the filing of

the Folliard suit, leading the trial judge in the District of Columbia to dismiss the Folliard suit on

the grounds that if more than one Qui Tam action is filed based on the same facts in different

venues, the first-to-file case prevails over any subsequently filed case.  The Folliard suit was

dismissed on June 28, 2010.  (*Id.* at 6.)

On November 5, 2010, CDW issued identical subpoenas on Brady Folliard ("Folliard")

individually and on McKnight for documents relevant to the Liotine suit.  (Resp't's Mot. for

Attorney Fees and Costs ("Mot. for Attorney Fees") at 6-7.)  Folliard and McKnight objected to

the subpoenas on privilege grounds.  (*Id.* at 7.)  On December 22, 2010, CDW moved to enforce

the subpoenas.  (*Id.*)  The Court issued an order on April 7, 2011 directing McKnight to produce

documents and a privilege log for an *in camera* review.  (Order, Apr. 7, 2011 at 12.)

Pursuant to that Order, McKnight produced some responsive documents to CDW and

submitted to the Court two privilege logs, 504 e-mails and 200 documents, including a

Cooperation and Sharing Agreement between Folliard and Liotine.  (Mot. for Attorney Fees at 2.)

On May 12, 2011, CDW filed another Motion to Enforce the Subpoenas, arguing that

McKnight's submission to the Court contained no evidence of common interest privilege because

McKnight had no evidence of a signed Cooperation Agreement.  (Movant's Mot. to Enforce

April 7, 2011 Order [9].)  On August 10, 2011, the Court denied the May 12 motion, noting that

documents submitted for the *in camera* review showed that Folliard and Liotine entered into a

Cooperation Agreement in which the parties agreed "to pool information for a common goal"

and to have a "coordinated legal strategy."  (Order, Aug. 10, 2011 [13] at 6-7.)  The Cooperation

Agreement, e-mail communications and other documents established a common interest

privilege beginning on August 25, 2009, and continuing through the April 7, 2011 Order.  (*Id.* at

7.)

On September 1, 2011, McKnight filed a Motion for Attorneys Fees and Costs.  It

requests $117,900 for 203.6 hours of work in conjunction with the action to enforce the

subpoenas.  (Resp't's Notice of Filing Exhibits, Ex. 8 [17-6].)  McKnight requests $625 per hour

for 166.2 hours of work, and $375 per hour for the remaining 37.4 hours.  *Id.*

## II.  PLAINTIFF'S MOTION FOR ATTORNEY FEES

### a.  Federal Rules of Civil Procedure 45(c)(2)(B)

McKnight argues that it should be awarded attorneys fees under Federal Rules of Civil

Procedure 45(c)(2)(B).  (Mot. for Attorney Fees at 4.)  Under Rule 45, a person commanded to

produce documents subject to a subpoena may object to production either before the time

specified for compliance or 14 days after the subpoena is served.  Fed. R. Civ. P. 45(c)(2)(B).

The party serving the subpoena may then move for a court order compelling production.  Fed. R.

Civ. P. 45(c)(2)(B)(i).  Where the producing person is a non-party to the suit, any resulting court

order commanding compliance must protect the non-party "from significant expense resulting

from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii).[1]

CDW argues that Rule 45(c)(2)(B) does not apply to McKnight because McKnight did

not object to the cost of production until after he had produced the documents pursuant to the

April 7, 2011 Order.  (Movant's Opp. to Resp't's Mot. for Attorney Fees and Costs ("Movant's

Opp.") [15] at 6.)  CDW cites *In re First American Corp*, 184 F.R.D. 234 (S.D.N.Y. 1998), to

support its argument.  In citing to *In re First American*, CDW ignores the court's conclusion that

if the producing party opposes the subpoena or objects to producing the requested documents, the

non-party is not precluded from seeking reimbursement post-production of the documents.  *Id*. at

239 ("[u]nder Rule 45, a nonparty is not rigidly required to seek reimbursement for the costs of

compliance prior to responding to a subpoena").  The Court is also aware that had Mr. McKnight

given CDW advance notice of his claim for significant attorney fees for producing the requested

documents, CDW would have had the opportunity to withdraw or modify its subpoena.  *See*

*United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368 (9th Cir. 1982)

(allowing the setting of costs post-production under Rule 45 in part because producing party

made clear its intention to seek reimbursement and updated requesting parties periodically such

that requesting parties "could easily have modified or limited their discovery demands whenever

they felt that their exposure to potential reimbursement exceeded the value of the requested

material").  The Court will not preclude McKnight from seeking production costs based on the

timing of its request.

---

[1]McKnight is a non-party because Folliard, his client, is not a named party in the Liotine
suit and McKnight is not a counsel of record in the Liotine suit.

Rule 45's protection of a non-party from significant expense does not preclude the non-party from bearing the costs of production.  *In re Exxon Valdez*, 142 F.R.D. 380, 382 (D.D.C. 1992); *In re Honeywell Int'l, Inc. Sec. Litig*, 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003).  Relevant factors in determining which party should bear the costs of production include: (1) whether the non-party has an interest in the outcome of the litigation; (2) whether the non-party can more readily bear the costs of production than the requesting party; and (3) whether the litigation is of public importance.  *Lindor v. Calero-Portocarrero*, 180 F.R.D. 168, 177 (D.D.C. 1998).

Where the non-party was involved in litigation arising out of the same facts or was substantially involved in the underlying transaction, courts have found the non-party to be interested in the outcome of the litigation.  *See Wells Fargo Bank, N.A.*, *v. Konover*, 259 F.R.D. 206, 207 (D. Conn. 2009); *In re First American Corp.*, 184 F.R.D. at 242.  McKnight acknowledges that "McKnight & Kennedy does have an interest in the outcome of the Liotine case."  (Mot. for Attorneys Fees at 8.)  Mr. McKnight stated in a written declaration that Liotine's attorney from Aschemann Keller, LLC, ("Aschemann Keller") retained Mr. McKnight beginning in the summer of 2010 to provide legal services in the Liotine suit.  (Resp't's Mot. for an Extension of Time to Respond to CDW's Mot. to Enforce the Subpoenas, Ex. 2 [4-3].)  At the January 31, 2012 hearing before the undersigned, Mr. McKnight told the Court that he continues to be involved as a "consultant" to Aschemann Keller.  Mr. McKnight stated that at the resolution of the Liotine suit, he expects his hours to be included along with Aschemann Keller's in the petition for attorney fees.  Further, he referenced the signed Cooperation Agreement between Liotine and Folliard and stated that it would grant Folliard, McKnight's client, a percentage of any recovery by Liotine in the Liotine suit.

-5-

Mr. McKnight's representation of Folliard in the Folliard suit and subsequent role of consulting attorney in the Liotine case prevents him from being a neutral non-party in the Liotine suit. *See In re First American Corp.*, 184 F.R.D. at 242 (non-party was "not-neutral" for purposes of awarding costs where the non-party was an auditing firm that had audited one of the parties and had been a party in previous litigation resulting from its auditing work).

Regarding the second factor, which party can more easily bear the expense of production, McKnight points out that CDW is one of the largest private companies in the U.S. (Mot. For Attorney Fees at 9.) McKnight's ability to bear the expense of production is different than a non-party with no connection to the underlying action. The documents CDW requested from McKnight are relevant to the underlying facts in both the Liotine and Folliard suits. Folliard is currently a co-venturer with Liotine in the Liotine suit, and Mr. McKnight stands to gain financially from his continued representation of Folliard and his status as a consultant to the Liotine litigation. Finally, this case has some public importance, as the public is interested in ensuring that taxpayer dollars are not spent on products that violate the Trade Agreements Act.

The overwhelming factor here, however, is McKnight's strong financial interest in the outcome of the Liotine suit. *See Lindor,* 180 F.R.D. at 177. Although McKnight is a non-party, Mr. McKnight is intertwined with the Liotine suit. As noted above, he is a retained consultant of Liotine's law firm, Aschemann Keller, in the Liotine case. He expects to be compensated by Aschemann Keller after the Liotine suit is resolved. He remains the lawyer for Folliard, who has a financial stake in the outcome of the Liotine suit. McKnight's involvement in the Liotine suit is strong enough to require it to bear the cost of production.

### B. Fees for Responding to CDW's Motion to Enforce

McKnight seeks fees under Fed. R. Civ. P. 37(a)(5)(B) for responding to CDW's Motion to Enforce the Court's April 7, 2011 Order.  (Mot. for Attorney Fees at 10.)  Under Rule 37(a)(5)(B), a Court denying a motion to compel must require the movant to pay the opposing party's reasonable expenses in defending the motion, unless "the motion was substantially justified."  A discovery motion is substantially justified if there is a "genuine dispute," or "if reasonable people could differ as to [the appropriateness of the contested action]."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550 (1988).

McKnight argues that CDW's Motion to Enforce the Court's April 7, 2011 Order was not substantially justified.  (Mot. for Attorney Fees at 10.)  The Court's Order allowed McKnight to submit for *in camera* review documents showing a common interest privilege between McKnight and the Liotine suit, along with a privilege log.  (Order, April 7, 2011 at 9.)  McKnight submitted the documents and the privilege log, and CDW filed its Motion to Enforce the Court's April 7, 2011 Order before the Court finished its review, claiming that McKnight should be required to produce all of its documents because the privilege log showed no evidence of a common interest privilege.  (Memo in Support of Movant's Mot. to Enforce Court's Apr. 7, 2011 Order [10] at 2-5.)

The Court denied CDW's Motion, determining that based on the *in camera* review, many of McKnight's documents were covered by the common interest privilege.  (Order, Aug. 10, 2011 at 6-7.)  Although CDW's Motion was denied, a genuine dispute existed about whether McKnight's documents were privileged, which led the Court to request the *in camera* review.  Using the standard from *Pierce*, 487 U.S. at 565, reasonable people could differ as to the

appropriateness of CDW's Motion to Enforce, especially considering CDW did not have access to the *in camera* documents when making the motion.  (*See* Opp. to Movant's Mot. to Enforce Court's Apr. 7, 2011 Order [11] at 3-4.)  The timing of CDW's Motion alone does not make the Motion inappropriate or eliminate the genuine dispute that existed regarding the production of the documents.

McKnight also asks for fees under 28 U.S.C. § 1927 for opposing CDW's Motion to Enforce the Court's April 7, 2011 Order.  28 U.S.C. § 1927 allows the Court to award sanctions when a party "multiplies the proceedings in any case unreasonably and vexatiously."  To warrant sanctions, the party's conduct must be "at least reckless."  *United States v. Wallace*, 964 F.2d 1214, 1217 (D.C. Cir. 1992).  Evidence suggests that CDW brought its Motion to contest McKnight's lack of production on the merits, rather than to harass McKnight or increase costs.  (*See* Movant's Mot. to Enforce the Court's Apr. 7, 2011 Order.)  CDW believed it had a strong argument and only filed one Motion; thus, it did not act recklessly.  *See Wallace*, 964 F.2d at 1220 ("where courts have employed Section 1927, the attorney's behavior has been repeated or singularly egregious").

McKnight's request for attorney fees and costs under Federal Rules of Civil Procedure 37(a)(5)(B) and 28 U.S.C. § 1927 will be denied.

## III. CONCLUSION

Based on the preceding reasons, McKnight's Motion for Attorney Fees and Costs in the amount of $117,500 will be denied.  An Order will accompany this Memorandum Opinion.


Date: March 16, 2012                                    _____/s/_____

                                                        ALAN KAY
                                                        UNITED STATES MAGISTRATE JUDGE